### BOSTON MACHINE WORKS CO. v. PRIME MFG. CO.

### No. 3287.

Circuit Court of Appeals, First Circuit.

Dec. 8, 1937.

George P. Dike, of Boston, Mass. (Cedric W. Porter and Dudley P. Ranney, both of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

These are two appeals by the defendant in a patent suit. We shall refer to the parties, plaintiff and defendant, as they appeared in the court below.

The plaintiff, the Prime Manufacturing Company, brought suit for infringement of the Ridderstrom patent, No. 1,794,204, for tape-applying machine dated February 24, 1931, on application filed April 24, 1928. The defenses were invalidity and noninfringement. The case was referred to a master who found for the defendant that the patent was invalid because anticipated. The District Judge set aside the master's conclusion on this point which, as will be more fully stated, rested on a pure technicality, and held claim 24, the only one in suit, to be valid and infringed. The first appeal is from this decision.

The defendant counterclaimed against the plaintiff for infringement of three Osgood patents, owned by it, viz., No. 1,549,-376 for taping machine dated August 11, 1925, on application filed January 12, 1922; No. 1,646,212 for combined taping and seam pressing machine dated October 18, 1927, on application filed June 7, 1926; and reissue No. 19,319 for seam pressing machine dated September 18, 1934, on application filed December 30, 1927. The issues raised by the counterclaim were referred to the same master. He found that the first Osgood patent, No. 1,549,376, was valid and was infringed by one of the plaintiff's machines, but not by others. The District Judge confirmed this finding and decreed accordingly. From this decree no appeal has been taken. The master found that the third Osgood patent, reissue No. 19,319, was valid but not infringed. The District Judge confirmed this finding and decreed accordingly. From this discree no appeal has been taken. On the second Osgood patent, No. 1,646,212, the master found in view of the prior art that in order to give the patent validity the claims in suit must be greatly narrowed by construction, and that so construed they were not infringed. These findings were confirmed by the District Judge and form the basis of the second appeal. The parties

Charles W. McDermott, of Boston, Mass., for appellant.

signed a rather elaborate agreement of facts, relating both to the original bill and to the counterclaim. They agreed that the case on the Ridderstrom patent should be first heard, and then the counterclaim on the Osgood patents. We shall deal with the appeals in the same way.

As to the Ridderstrom patent: The first question is whether the District Judge was right in rejecting the master's finding and holding claim 24 of that patent valid and infringed. The plaintiff put in the usual prima facie case, viz., a copy of the patent, the plaintiff's title to which is not disputed, and the testimony of an expert who explained the patent and the operation of the plaintiff's machine and of the defendant's machine, demonstrating the infringement of claim 24. The defendant admitted the manufacture of the machine referred to and the date of such machine. The agreed statement of facts was treated as part of the record; not being formally put in evidence by either party. This completed the plaintiff's case-in-chief. The defendant thereupon rested without introducing any evidence, and moved for judgment in its favor upon the ground that the facts stated in paragraph 9 of the agreed statement showed that the Ridderstrom patent was invalid for anticipation. This paragraph reads as follows:

"9. On January 21, 1927, one of the defendant's Model HSSRS machines, the same being defendant's back-seam machine No. 426, was placed in the factory of Harney Shoe Company, a corporation of Massachusetts, at Lynn, Massachusetts, for trial, and there operated continuously as a regular factory machine in the manufacture of shoes for four months; a lease of this machine to said Harney Shoe Company was drafted by defendant on March 1, 1927, said lease was never executed, and said machine No. 426 was returned to defendant in or about the month of June, 1927."

The defendant's model HSSRS machine was the same one put in evidence by the plaintiff as an infringement of the Ridderstrom patent. It will be noticed that not only this machine, but also the second Osgood patent, both in issue and in application, antedated the Ridderstrom patent. Both parties knew, however, that there had been an interference proceeding in the Patent Office between Ridderstrom and Osgood, in which after full hearing, including an appeal to the Court of Customs and Patent Appeals, priority had been awarded to Ridderstrom, and that the date of his invention had been carried back of his filing date. In the defenses pleaded against the Ridderstrom patent, the defendant specifically set up various patents as anticipations of Ridderstrom as required by the statute (35 U.S.C.A. § 69), and made general allegations of prior use and abandonment; but it did not include either the second Osgood patent or the use of the defendant's model HSSRS machine in the Harney Shoe Company factory in January, 1927, or at any other time among the prior uses or anticipations on which it relied, as the statute explicitly requires. The plaintiff understood that paragraph 9 of the agreed statement related only to the counterclaim; that the facts therein stated were not admissible against the Ridderstrom patent because not pleaded or specified; and the agreed statement had been assented to by it on this understanding. It was surprised by the defendant's interpretation of the statement. At the close of the defendant's opening before the master, the plaintiff moved for leave to put in the interference record carrying back the date of the Ridderstrom invention. The master denied the motion, and the plaintiff excepted. The master found that the defendant's machine HSSRS infringed claim 24 of the Ridderstrom patent, but he held the stipulated facts in clause 9 applicable to the Ridderstrom patent, and that such facts showed it to be invalid for anticipation. The result was obviously a travesty on justice, and the District Judge set aside this finding saying:

"In view of the favorable outcome of the interference proceeding, it would seem clear that there was no meeting of the minds upon a stipulation that Osgood was the first inventor. In the earlier paragraphs of the stipulation, the defendant had admitted infringement so that paragraph 9 was not necessary to plaintiff's case. It is not difficult to believe that the plaintiff agreed to the facts therein stipulated in order to aid the defendant in proving its case, as presented by its counterclaim. In any event, a vital issue of fact has not been decided upon the merits.

"A just and final disposition of the rights of the parties should be the ultimate aim of the court. The plaintiff should not be denied a reasonable opportunity to establish the validity of its patent.

"The record of the whole case leaves little doubt that if the plaintiff is permitted so to do, it may be able to prove that the defendant's Model HSSRS does not anticipate the Ridderstrom patent. The circumstances of the case are such that this court ought not to permit technicalities to work palpable injustice when such results can easily be avoided. I am persuaded that a proper disposition of the matter is to allow the defendant, within twenty days, to amend its answer by setting up the Osgood patent, and/or the prior use of the machine (Model HSSRS) by way of anticipation, and then re-commit the case to the Master upon the single issue raised by the amendment and plaintiff's answer thereto, if any, to be filed within ten days following notice of the defendant's amendment. If the defendant does not elect so to amend its answer, then I will dispose of plaintiff's exception to the Master's report by sustaining it, and will order a decree adjudging plaintiff's patent valid and infringed. I am persuaded that on the Master's report plaintiff is entitled to such a decree unless the defendant evinces a willingness to openly attack the validity of plaintiff's patent after due notice, as required by statute."

The defendant .elected not to amend its answer setting up the Osgood patent and the Harney machine in accordance with the leave granted by the District Judge and going into the merits of that question. The District Judge thereupon ruled in effect that the statements in paragraph 9 of the agreed facts were not applicable in the suit on the Ridderstrom patent. There was accordingly no evidence against the validity of that patent on the record, and a decree was entered for the plaintiff. It certainly cannot be said that the District Judge abused his discretion in setting aside the master's finding and opening the way to a trial of the merits of the case. He had the strongest reasons to believe that, as to the defendant's model HSSRS and the defendant's second Osgood patent, the defendant's contention that they anticipated Ridderstrom's invention was made insincerely and contrary to adjudicated facts, and that the defendant's motion for judgment was an effort to obtain a decision to which it was not entitled on the merits by means of what was at most a defect or misunderstanding in the pleadings and the agreed statement. The master in effect so found. As soon as the misunderstanding

developed, the plaintiff called attention to it, and moved to reopen the case and put in the interference record. In denying this motion, the master was clearly wrong, as the District Judge properly held. This is true irrespective of whether on a strict interpretation of the agreed statement of facts in the light of the specified defenses, paragraph 9 was or was not applicable to the case on the Ridderstrom patent.

The other question on this patent is whether the District Judge was right in ruling that clause 9 of the agreed statement had no bearing on the Ridderstrom patent, but related only to the defendant's case on its counterclaim. The agreed statement of facts begins, "The parties to the above entitled cause, by their respective attorneys, hereby stipulate and agree as follows." The agreed statement contains 19 clauses, many of which are subdivided; none of them is in terms restricted, either to the plaintiff's suit or to the counterclaim. On inspection some of them obviously relate to the plaintiff's case; some of them to the defendant's case. Clause 9 follows clauses 7 and 8 which appear to relate to the counterclaim, certain earlier and also certain subsequent clauses evidently relate to the plaintiff's bill. The plaintiff made what amounted to a motion that the statements in clause 9 be limited to the counterclaim, and the District Judge held in effect that they should be so limited. As has been said, the statute expressly made these statements inadmissible against the patent because they were not specified. Far from intending to waive the statute, it was clear that the plaintiff was relying on it. There was before the District Judge the further fact that he had given the defendant every opportunity to specify these defenses and have the full benefit of them, and the defendant had refused it. The District Judge may well have regarded this refusal, in connection with the other surrounding circumstances, as amounting to a waiver of this defense.

The constitutional question raised by the defendant seems to us unfounded and not to require discussion; nor do we think that the master's conduct in taking a view accompanied by counsel and in making measurements, etc., is open to criticism.

The final question on this aspect of the case is whether the District Judge abused his discretion in not directing that the case be reopened and the defendant be

allowed to present evidence of the specified defenses to the Ridderstrom patent. It does not appear that these other defenses were in any way related to or conditioned on the prior use specified in clause 9. The defendant had had full opportunity to present them. By not doing so it clearly waived them. On this point also we do not think the District Judge can be said to have exceeded his discretionary power. It follows that the decree on the Ridderstrom patent was right and should be affirmed.

As to the counterclaim on Osgood patent No. 1,646,212: The purpose of the machine shown in this patent is to flatten a sewed seam and apply over it a strip of adhesive tape. The upper of a shoe is sewed together at the back in such a way that the ridge made by the seam comes on the inside. In shoes which have no counters, or flexible counters, this ridge is obviously very objectionable. This fact has been recognized for many years. Moreover, such a seam if subjected to a severe pulling strain is apt to stretch. To obviate these objections it was customary to flatten or "rub down" the seam and to strengthen and cover it with a tape applied over the seam and sewed longitudinally to the leather on each side of it or cemented thereto. There were machines which performed these operations both on stitched and on cemented tapes. The Levy patent of 1896 shows a sewing machine and two needles which straddle the seam, and arrangements to feed a tape which is sewed along on each side of the seam. The Glass patent of 1914 also shows such a machine for cemented tapes. Separate machines were used for flattening or rubbing down the seam. By rubbing down a seam ridge is meant a permanent crushing or flattening of the ridge; it requires considerable pressure. It is claimed for the machine of the second Osgood patent that it combined these two operations and was a distinct forward step. It has a presser foot, with a longitudinal slot in the underside, adapted to fit over and press down the seam, and flat sides which press the tape on each side of it. Seams, joining pieces of leather or fabric, are run at varying distances from the edges to be joined, depending on the character of the material, the kind of thread and stitching used, and other considerations. The seam on the part of the shoe here in question was customarily run close to the edge of the leather. Such seams do not project greatly; the master finds not over one-twentieth of an inch. In the Osgood machine the adhesive tape is first applied over the seam; the presser foot then comes into action to press the tape on the seam; and then the sides of the presser foot press the tape against the leather along the sides of the seam. The pressure on the seam is applied through the tape which to some extent certainly protects the seam from permanent crushing or flattening. The master made a careful investigation of the effect of the Osgood machine at this point. He concluded that it had substantially no rubbing down or flattening effect and functioned on this work only as a taping machine.

"I find that the evidence was insufficient to establish the defendant's claim that its machine operated to depress the height of the seam ridge materially or to establish the charge that any of the plaintiff's alleged infringing machines performed that function.

"The machine of the second Osgood patent is designed to lay tape and secure it adhesively to leather seams having ridges of trifling height, that remain upright during and after the operation. The ridge is only about 1/20th of an inch high above the line of stitching, is not opened and the flaps are not pressed against the body of the work. It is difficult, if not impossible, to see with the untrained naked eye that the ridge has been reduced in height by the operation of defendant's machine, and with delicate measuring instruments only an insignificant change appears.

"There is no operation performed by the Osgood machines that is comparable or similar to that performed by the prior art rubbing down or pounding machines."

■■ These findings were confirmed by the District Judge. As they do not appear to be clearly wrong, they must be accepted. They effectively dispose of the counterclaim on this patent. The broad claims of this Osgood patent read on the prior art. In holding that to give them any validity they must be limited to apply only to the construction shown in the Osgood patent, the master and the District Judge went at least as far in support of the patent as the evidence justified.

The decree of the District Court is affirmed, with costs.